Shauck, J.
The claim of the commissioners for compensation calls upon them to show legal authority for its payment. In Debolt v. The Trustees of Cincinnati Township, 7 Ohio St., 237, it was held that “An officer whose fees are regulated by statute, can charge fees for those services only to which compensation is by law affixed.” This view of the subject has been constantly adhered to in numerous cases, including Eshelby v. The Cincinnati Board of Education, 66 Ohio St., 71. From all the cases relating to the subject it appears that all duties imposed upon a public officer without provision for compensation are oresumed to be performed iii consideration of the general emoluments ot his office. The considerate opinion of the common pleas judge in the present case is presented to us as the argument for plaintiffs in error, and it shows that he did not overlook this doctrine, or the cases in which it is maintained.
The required authority for the payment of the compensation sought by the commissioners is said to be found in Section 4903 Revised Statutes: “The compensation for. services as such director shall be the same in all respects as county com *118 thissioners.” To this authority two objections are urged.
First. That the section relied upon has been repealed by implication by the act of April 21, 1904 (97 Q. L., 254), which placed county commissioners upon a salary, instead of allowing them compensation by fees as formerly. That act in its first section (Section 897, Revised Statutes) affixes to the office of county commissioner a prescribed salary in every county of the state, and the second section of the act provides “The compensation provided in the preceding section shall be in full payment of all services rendered as such commissioners.” It is true that the later act does not expressly repeal the former provision now relied upon as authority for the payment of the fees claimed by the commissioners. It is also true that repeals by implication are not favored, the meaning of which is,- and it must be, only that a court will not, in the absence of an express repeal, consider former legislation as repealed by implication when the former and later act may be harmonized by reasonable construction so as to continue both in operation. It is consistent with the elementary rule, always recognized’ as indispensable to the right administration of the written law, that the present will of the legislature is found in its latest expression. The act of April 21, 1904, does expressly repeal the act under which fees had been previously allowed to the county commissioners as compensation for their services, and thus there was removed from the legislation of the state the provision referred to in Section 4903, that the compensation for services of direc *119 tors should be the same in all respects as county-commissioners. From this express repeal it resulted that if we should attempt to treat Section 4903 as still in force, we would find it utterly unintelligible and incapable of practicable application because there is no longer any designation of fees for the county commissioners. In giving effect to the second section of the act of April 21, 1904, that the compensation provided in- the act should be in full payment for the services rendered as such commissioners, we cannot resist the conviction that the terms employed indicate the legislative intent that compensation of commissioners shall not, by any statute, exceed that designated in the act. Here is expressed affirmatively by the language employed in the act the legislative will with respect to the subject so comprehensive that it cannot be doubted that the express repeal of Section 4903 was omitted by mere inadvertence. The last named section being incompatible with the later legislation must yield to it because of the impracticability of harmonizing the earlier and the later acts so that they may be enforced tog'ether.
It is further suggested that Section 4903 is void because it is an essential part of a statute upon a general subject, with only a limited operation, and therefore, repugnant to Section 26 of Article II of the constitution, that “all laws of a general nature shall have a uniform operation throughout the state.” This section is a part of Chapter 10, Title 7, Revised Statutes, which first appeared in approximately its present form in the revision of 1880. It embraces Sections 4876 to 4907; inclusive, all providing as indicated by the heading of *120 the chapter, for the repair of improved roads. That the provisions of the chapter do not have a uniform operation throughout the state is apparent from numerous of its provisions. Section 4889, as the act appears in the latest revision, designates thirty-two of the eighty-eight counties of the state within which the control and management of such roads is to be conducted in a manner entirely different from that which it places in operation in the remaining counties of the state. The counties thus grouped for the operation of this special legislation comprise the most, as well as the least, populous in the state. The statute suggests no basis of classification which might be supposed to justify different policies in the control and management of the roads. Indeed, as the counties referred to are plainly designated by their names, and not otherwise, it is entirely manifest that the legislature did not regard the subject of roads as being within this provision of the constitution.
Whether the subject is within the constitutional requirement that laws relating to it shall have a uniform operation throughout the state, was perhaps a matter of doubt at the time of the revision of 1880. But since that time the. question has received full consideration from this court in Hixon v. Burson et al., 54 Ohio St., 470, and The State, ex rel., v. Davis et al., 55 Ohio St., 15. In both of these cases the subject was held to be within Section 26, Article II of the constitution. The conclusion in the latter case being thus stated in the first proposition of the syllabus: “Highway bridges, as well as the highway of which they are a part, are general subjects of legislation within *121 the meaning of the constitution.” Certainly further consideration of the subject is not necessary. It could hardly be profitable.
What may be the road laws of the state, in view of this conclusion, we need not attempt to determine, for in no condition could we be relieved of the conclusive effect of two propositions whose soundness all recognize: first, the legislature may not legislate contrary to the provisions of the constitution; second, the courts may not legislate.

Judgment affirmed.

Crew, C. J., Summers, Spear, ^Davis and Price, JJ., concur.